UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, Plaintiff, v. **BRIAN FEDERICO**, Defendant. | Case No. 12-cr-00862-YGR-2 <br><br> **ORDER DENYING MOTION FOR ACQUITTAL ON COUNTS TWO AND THREE PURSUANT TO FED. R. CRIM. P. 29** <br><br> Re: Dkt. No. 460 |

Following a nearly two-week trial, a jury quickly convicted defendant Brian Federico on all three counts tried against him: a single count of conspiracy to commit mail fraud under 18 U.S.C. § 1349, and two individual counts of mail fraud. Federico now moves under Federal Rule of Criminal Procedure 29 for acquittal on Counts Two and Three.[1] (Dkt. No. 460.) Federico asserts that the evidence at trial was insufficient as a matter of law to convict Federico of substantive mail fraud, as charged in Counts Two and Three. Federico further contends that he is entitled to an acquittal on Count Two because the applicable statute of limitation had lapsed when the indictment was filed on December 6, 2012. The government opposes both grounds, and avers that Federico has waived any statute of limitations argument by failing to timely raise it before or during trial.

Having carefully reviewed the record, the papers submitted on each motion, the parties' oral arguments at the hearing held on November 22, 2019, and for the reasons set forth more fully below, the Court **DENIES** the motion for acquittal on counts two and three pursuant to Federal

---

[1] In light of the Court's prior rulings as to Count One, Federico does not move for acquittal as to Count One in the motion for acquittal. (*See* Dkt. No. 460 at 6 ("[Count One] ha[s] been fully litigated before this Court, which explained its reasoning in rejecting them. The claims are thus fully preserved for appellate consideration, and it would serve no purpose to now revisit them.").)

1 Rule of Criminal Procedure 29.

## I. LEGAL FRAMEWORK

A judgment of acquittal is only merited if a court, when viewing the evidence in the light most favorable to the government, determines that a rational fact finder could not have found the defendant guilty beyond a reasonable doubt of the crimes with which he was charged. *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979). *See also United States v. Nevils*, 598 F.3d 1158, 1164-67 (9th Cir. 2010) (en banc); *United States v. Milwitt*, 475 F.3d 1150, 1154 (9th Cir. 2007). "There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Magallon-Jimenez*, 219 F.3d 1109, 1112 (9th Cir. 2000). When considering a Rule 29 motion for acquittal, "[t]he government is entitled to all reasonable inferences that can be drawn from the evidence." *United States v. Alexander*, 48 F.3d 1477, 1490 (9th Cir. 1995) (en banc) (quoting *United States v. Lucas*, 963 F.2d 243, 247 (9th Cir. 1992)). Furthermore, "it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *United States v. Rojas*, 554 F.2d 938, 943 (9th Cir. 1977).

## II. MOTION FOR ACQUITTAL PURSUANT TO FED. R. CRIM. P. 29

### A. Mailing Element of Mail Fraud Counts

Federico avers that the government did not establish beyond a reasonable doubt that the defendant made use of the mail for purposes of Counts Two and Three. Specifically, Federico claims that because evidence demonstrates that checks from Matrix Services, Inc. ("Matrix") could have been created and distributed from other offices, including from the Orange, California office which was overseeing the project, "the origin and method of delivery of the checks are shrouded in enough uncertainty that no rational juror could have concluded beyond a reasonable doubt that the checks were in fact mailed." (Dkt. No. 466.) Relying primarily on *United States v. Lo*, 231 F.3d 471 (9th Cir. 2000), Federico asserts that the evidence is insufficient because there is a missing chain of custody that the two checks at issue were actually mailed from Matrix to Imperial Shotcrete, Inc. ("Imperial"). *See id.* at 477 ("To accept attenuated circumstantial facts of

the kind presented here as sufficient to meet the mailing element would, as a practical matter, eradicate the significant of the disjunctive consideration that governs which fraud crimes may be prosecuted in the federal judicial system and which are to remain solely state matters."). The government opposes.

In general, the Ninth Circuit has affirmed "circumstantial evidence" in form of "routine custom and practice" of a business "to support the inference" that a document was indeed mailed. *See United States Brackenridge*, 590 F.2d 810, 811 (9th Cir. 1979) (evidence to support mail fraud sufficient where employee initialed check and manager established routine custom and practice for handling mailed requests). *See also id.* ("Direct proof of mailing was not required."); *United States v. Green*, 745 F.2d 1205, 1208 (9th Cir. 1984) ("Direct proof mailing is not required . . . . Evidence of routine custom and practice can be sufficient to support the inference that something is mailed.").

The Court finds sufficient evidence in the record exists for a rational juror to conclude that that the government proved the mailing element of mail fraud beyond a reasonable doubt to convict Federico on Counts Two and Three. Here, the mailed documents, *i.e.* the checks, were themselves admitted as evidence. (*See* Trial Exhibits 73B, 400A-C through 442B; *see also* Dkt. No. 462 at 6.) The record reflects custom and practice evidence from witnesses of the sending party, Matrix, establishing that such checks were routinely mailed to Imperial as a normal business practice. (Trial Transcript at 4:80:8-26 (Kevin Cavanah); 724:10-23 (Kevin Laney); 798:16-19 (Laney); 807:13-23 (Laney); 931:22-932:22 (Khary Sands).) This testimony was confirmed by separate witnesses from Imperial that checks from Matrix were received via mail. (Trial Transcript at 1067:20-1068:22 (Miguel Ibarria).) The record further reflects that while other Matrix offices have the capabilities to issue checks, including another located in-state in Orange, California, such checks were generally sent from the office located in Tulsa, Oklahoma. (Trial Transcript at 798:16-799:4 (Laney).) Moreover, the local office located in Suisun City, California did not have the infrastructure to issue checks. (Trial Transcript at 480:8-17 (Cavanah); 724:10-23 (Laney); 814:14-20 (Laney).) Under the general Ninth Circuit authority, such a showing would suffice to support the mailing element of a mail fraud charge.

3

Federico's arguments on the import of *Lo* do not dictate otherwise. *Lo* is inapposite because, as summarized above, here, the government introduced more evidence than in that case. *Lo* concerned a failure by the government to introduce any direct evidence of the mailed document's existence, and testimony adduced at trial consisted entirely of the usual custom and practice evidence that would otherwise be enough to satisfy the mailing element. Indeed, *Lo* expressly recognized that "where the question is whether a document that did exist and did reach its destination was in fact mailed rather than arriving in some other manner, some small measure of custom and practice evidence is likely to be a necessary link in the chain of mailing evidence." 231 F.3d at 477. "[I]n those circumstances, there is no plausible negative inference to be drawn from the absence of more direct evidence," and thus, custom and practice evidence would suffice. *Id.* In faulting the government for failing to provide a copy of the mailed document into evidence, the Ninth Circuit stated that "business organizations ordinarily do keep copies or records of critical documents, particularly legally required documents," and that, despite this, "the absence of any direct evidence of the document's existence was not explained at trial." *Id.* Therefore, there was "a strong negative inference to be drawn here from the nature of the evidence produced that would be inappropriate where the custom and practice is limited to matters as to which direct evidence is unlikely to be available." *Id.*

Here, this situation is markedly different. There is no dispute that the government placed the mailed documents – *i.e.* the checks – underlying both Counts Two and Three into evidence. The government further adduced testimony from witnesses as to the usual custom and practice at Matrix that checks were routinely sent by mail from its Tulsa, Oklahoma office.[2] Moreover, unlike in *Lo* and other cases limited to the testimony of the sending party, testimony from the receiving party of the mailed documents – Imperial – confirmed that the usual custom and practice

---

[2] The record reflects that Matrix local office in Northern California lacked any capability to issue checks to Imperial. Federico's assertion that checks may have been issued by the Orange, California office, which may have allowed for an alternate delivery method to United States mail service, are irrelevant where witnesses from the sender and receiver of the mail at both businesses testified that the normal custom and practice was for the checks to be mailed to Imperial from Matrix.

4

was for Matrix to mail the checks to Imperial. Federico's assertions that *Lo* no longer allows circumstantial evidence established by the custom and practice of a business is contradicted by decisions subsequent to *Lo* which routinely affirm similar circumstantial evidence. *See United States v. Dimiceli*, 693 F. App'x 689, 689 (9th Cir. 2017) ("Sufficient evidence supports the mail-fraud convictions, including the use of mails in furtherance of the scheme to defraud. Employees of the relevant county recorder's offices testified that, after recording deeds of trust, deeds routinely are mailed to banks . . . . [despite that] employees testified that rare exceptions existed."); *United States v. Eglash*, 640 F. App'x 644, 647 (9th Cir. 2016) ("Here, the government presented evidence of mailing through custom-and-practice testimony offered by two claim representatives. We have held that such testimony supplies sufficient, albeit, circumstantial, proof of mailing under these circumstances. . . . We therefore affirm."); *United States v.Hirokawa*, 342 F. App'x 242, 248 (9th Cir. 2009) (sufficient evidence where accounting systems manager testified as to the agency's procedures and notations on document indicated it had been sent via United States mail). Thus, this evidence suffices under Ninth Circuit authority in concluding that a rational juror could have found that the government proved the mailing element of mail fraud beyond a reasonable doubt.

Accordingly, the Court **DENIES** the motion for acquittal on this ground.

### B. Statute of Limitations

#### 1. Whether Federico Waived the Statute of Limitations Defense

The government avers that Federico failed to raise a statute of limitations defense before or during trial, and that, accordingly, Federico has waived any such defense. Federico opposes, and asserts that he did, in fact raise a timely statute of limitations defense during the trial and introduced evidence in support of his defense.

"Commission of [a federal] crime within the statute-of-limitations period is not an element of the . . . offense," and "it is up to the defendant to raise the limitations defense." *Smith v. United States*, 568 U.S. 106, 112 (2013). "[A] statute-of limitations becomes a part of a case only if the defendant puts the defense in issue," but "[w]hen a defendant fails to press a limitations defense, the defense does not become part of the case and the [g]overnment does not otherwise have the

5

burden of proving that it filed a timely indictment." *Musacchio v. United States*, 136 S.Ct. 709, 718 (2016). *See also United States v. Hickey*, 570 F.3d 922, 928 n.1 (9th Cir. 2009) ("[S]tatute of limitations is an affirmative defense that is waived if it is not raised at trial[.]" (citing *United States v. Le Maux*, 994 F.2d 684, 689 (9th Cir. 1993))).

The dispute here centers on the meaning of how a defendant "press[es] a limitations defense" such that it becomes a part of the case. Neither party cites in the briefing nor identified at oral argument any precedential authority for what it means to press or raise a defense to put the defense sufficiently before a court such that it becomes part of the case.

The statute of limitations defense is often a factual issue for the jury – not a court – to determine. *See United States v. Doorst*, 1:17-CR-00109-APM, 2019 WL 3344277, at *2 (D.D.C. July 25, 2019) ("If there is conflicting evidence on the limitations issue, 'the question of whether the government instituted the prosecution . . . in a timely manner becomes an issue for the jury to determine. At that point, the jury must be properly instructed to determine whether the defense occurred outside the limitations period.'" (quoting *United States v. Wilson*, 26 F.3d 142, 158 (D.C. Cir. 1994))). *See also United States v. Wanland*, CR S-09-008, 2013 WL 1896312, at *3 (E.D. Cal. May 6, 2013) ("[I]f the pretrial motion raises factual questions associated with the validity of the defense [including the statute of limitations], the district court cannot make those determinations . . . . [as d]oing so would 'invade the province of the ultimate finder of fact.'" (quoting *United States v. Shafer*, 625 F.3d 629, 635 (9th Cir. 2010))); *United States v. Carson*, SACR 09-00077-JVS, 2011 WL 7416975, at *2 (C.D. Cal. Sept. 20, 2011) ("However, when issues are 'substantially founded upon and intertwined with evidence concerning the alleged offense,' the issues 'fall[] with the province of the ultimate finder of fact and must be deferred.'" (quoting *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986))); *United States v. Cianchetti*, 315 F.2d 584, 589 (2d Cir. 1963) ("The appellant contends that there was such ambiguity in the Government's evidence as to the relevant dates, that the question whether her acts were in fact committed within the five years of the filing of the indictment should have been submitted to the jury. But no such instruction was requested in the Court below."). Thus, where a defense is raised at trial, "[a] district court must instruct the jury on a theory of defense if

6

the defendant 'actually presents and relies' upon that theory at trial, even when []he does not request such an instruction." *United States v. Della Porta*, 653 F.3d 1043, 1052 (9th Cir. 2011) (citing *United States v. Bear*, 439 F.3d 565, 568 (9th Cir. 2006)). *See also United States v. Fuchs*, 219 F.3d 957, 962 (9th Cir. 2000) (finding that district court committed plain error where it did not include a jury instruction on the statute of limitations where defendant previously raised statute of limitations defense in pretrial motion but did not object or raise the defense again at trial).[3]

Although there is scarce authority on whether failing to present a statute of limitations defense to the jury constitutes waiver, courts that consider this issue generally find that a failure to present the defense to the jury constitutes a waiver of the defense. *See United States v. Hickey*, CR 97-0218-WHA, 2006 WL 1867708, at \*9 (N.D. Cal. July 6, 2006) (noting that the reasoning in prior order denying Rule 29 motion remains applicable, and holding that defendant waived the defense of statute of limitations because counsel did not object to a jury instruction that explicitly removed the statute of limitations from consideration, and that failure to object resulted in waiver); *United States v. Grammatikos*, 633 F.2d 1013, 1022 (2d Cir. 1980) ("Where the defense[] of time-bar . . . [is] squarely interposed, they must be submitted to a properly instructed jury for adjudication. . . . [N]o written or timely oral requests for such instructions were made, and the record reveals no objections were raised to the court's failure to include such charges at the conclusion of [the court's] instructions. Under these circumstances we have long and consistently held such issues to have been waived."). *See also Wilson*, 26 F.3d at 158-59 ("Ordinarily, where a case goes forward on a theory which places the offense within the limitations period, it is

---

[3] In analogous cases concerning conspiracy, "a defense of the running of the Statute of Limitations is properly submitted to the jury as a question of fact[.]" *Caywood v. United States*, 232 F.2d 220, 229 (9th Cir. 1956). In such cases, the defense must be "called to the attention of the court during the trial in relation to the evidence or [jury] instructions." *Id.* Where "such evidence ha[s] been tendered, the determination of the matter of the running of the statute must [be] left to the jury." *Id. See also United States v. Green*, CR 05-0208 WHA, 2007 WL 3343129, at \*7 (N.D. Cal. Nov. 7, 2007) ("The duration of a conspiracy for purposes of the statute of limitations is a fact question for the jury."); *United States v. Alfonso-Perez*, 535 F.2d 1362, 1364 (2d Cir. 1976) ("The clearest error of the trial judge was his failure to charge the jury concerning the statute of limitations.").

7

incumbent upon the defendant at the close of the trial to request a jury instruction requiring that his guilty be determined solely in terms of conduct not barred by the applicable statute of limitations.").

Here, the statute of limitations defense was not pressed in any pretrial filing. The statute of limitations issue was not apparent on the face of the indictment when the indictment was filed on December 6, 2012, (Dkt. No. 1 at 4 (listing the date of Count Two as December 7, 2007)) and Federico did not file any pretrial motions on the statute of limitations defense. Moreover, Federico indicated in a pre-trial filing that he was not seeking to "introduce evidence of selective prosecution or of a due process violation relating to an unreasonable delay in bringing charges or proceeding to trial." (Dkt. No. 376 at 1.)

Federico avers, however, that the statute of limitations defense was pressed during the trial itself. First, Federico contends that he sought testimony based on evidence introduced by the government in support of his statute of limitations defense raised in the motion. (*See, e.g.*, Trial Transcript at 1162:15-1163:15 (Ibarria); 1164:5-1165:13 (Ibarria); 1167:2-16 (Ibarria).) Second, Federico asserts that it was pressed by the filing of this motion. On preserving his ability to file a Rule 29 motion, Federico stated at the close of the government's evidence that the motion would be made on "all counts and all possible grounds." (Trial Tr. 1547:25-1548:20.) Federico offered to give a summary of these arguments at that time – which presumably would have included the statute of limitations – but the government responded that "it would be fine to wait until after the verdict." (*Id.*) Thus, the Court is faced with whether the testimony adduced and his statement that a Rule 29 motion would be made on "all counts and all possible grounds" is sufficient to place the statute of limitations defense appropriately into the case.

After consideration of the parties' arguments and the cited authority, the Court concludes that Federico's failure to request a jury instruction is fatal to his statute of limitations defense and that he has therefore waived this defense. Although Federico solicited responses in support of his defense during direct and cross examination, Federico did not request a jury instruction as to the

statute of limitations defense.[4] The statute of limitations defense is a determination that is appropriately placed before the jury. This is so where the evidence is in conflict and goes to the heart of the conduct at issue.[5] This is not an instance where the statute of limitations defense was in the case prior to trial such that either the Court or the government was aware of the defense and the Court should have *sua sponte* included a jury instruction on the defense.[6] *See, e.g.*, *Fuchs*, 219 F.3d at 962. Indeed, Federico had maintained until the eve of trial that he would not be raising any statute of limitations defense in this case. As other courts have similarly concluded that a defendant waives a statute of limitations defense by failing to present it to the jury for consideration, the Court here concludes that Federico has waived his statute of limitations defense.

Accordingly, the Court finds that Federico has waived his statute of limitations defense.

### 2. Whether the Indictment Was Timely as to Count Two

Although the Court has concluded that Federico has waived his statute of limitations defense, the Court still considers Federico's statute of limitations arguments for the sake of a complete record.

The government bears the burden of proving by a preponderance of evidence that it indicted a defendant within the appropriate limitations period. *See, e.g.*, *Smith*, 566 U.S. at 113-114; *Grunewald v. United States*¸ 353 U.S. 391, 396 (1957). *See also Flores v. Spearman*, No. SA CV 16-1255, 2016 WL 8136629, at *8 n.5 (C.D. Cal. Nov. 170, 2016) (recognizing "that the Ninth Circuit has held that, where a criminal defendant challenges whether the crime occurred within the statute of limitations, the government bears the burden of proving by a preponderance of the evidence that the criminal prosecution is not barred by the statute of limitations" (citing

---

[4] Moreover, the jury itself had insufficient evidence to reach a determination on the statute of limitations defense. As discussed at the oral argument on November 22, 2019, it was Federico who argued for only an excerpted portion of the indictment to be placed into the record before the jury. The government argued to include the entirety of the indictment, which would have included its filing date. Ultimately, only an excerpted portion of the indictment was placed into the record.

[5] *See supra* Section II.B.2. (discussing and summarizing the evidence in conflict as to whether the indictment was timely as to Count Two).

[6] As noted at the November 22, 2019 oral argument, the Court would have included such an instruction on the statute of limitations defense had Federico requested it.

*United States v. Gonsalves*, 675 F.2d 1050, 1054 (9th Cir. 1982))). The statute of limitations for mail fraud is five years. 18 U.S.C. § 3282.

The dispute here arises due to a conflict in the evidence. The government introduced evidence regarding the custom and practice of Matrix's payments to subcontractors such as Imperial. (*See* Trial Exhibits 73B, 400A-C through 442B; *see also* Dkt. No. 462 at 6, 8, 10, 12, 14.) Here, the evidence shows payment on an invoice with a check date December 7, 2007, which logically would have been mailed thereafter.[7] However, evidence also exists that the custom and practice of Imperial was to note the date a check was received by stamping "PAID" on an invoice, and similarly marking its folder. (*See* Dkt. No. 462 at 10, 14; *see also* Trial Transcript at 1162:15-1163:15 (Ibarria); 1164:5-1165:13 (Ibarria); 1167:2-16 (Ibarria)) Here, the handwritten notation on both was "12-3-07[.]"[8] Thus, notwithstanding the custom and practice of both businesses, either the electronic check system inserted the wrong date for the check or Imperial employees erred by inserting the wrong date on the folder and invoice.

The crux of the parties' dispute, however, centers on *when* the statute of limitations for Count Two begins. In general, it is well-established that a "statute of limitations begins to run [is] when the 'crime is complete.'" *United States v. Drebin*, 557 F.2d 1316, 1333 (9th Cir. 1977) (quoting *Toussie v. United States*, 397 U.S. 112, 115 (1970)). "The crime is complete as soon as every element in the crime occurs." *Drebin*, 557 F.2d at 1333. "Mail fraud consists of: (1) a scheme or artifice to defraud; and (2) use of the mails in furtherance of the scheme." *United States v. Vaughn*, 797 F.2d 1485, 1492-93 (9th Cir. 1986). "[E]ach mailing in furtherance of a prohibited scheme to defraud constitutes a separate mail-fraud violation." *United States v. Beardslee*, 197 F.3d 378, 385 (9th Cir. 1999).

Despite the well-establish rule that the statute of limitations begins to run when a crime is complete, Federico avers that the statute of limitations runs from the date of the mailing of the

---

[7] The Court takes judicial notice that December 7, 2007 is a Friday.

[8] The Court takes judicial notice that December 3, 2007 is a Monday, and rejects the government's arguments that the "3" is an "8" in the notations on the invoice and folder.

10

check, which he contends occurred on or before December 3, 2007. Citing Fifth Circuit authority, Federico asserts that "[t]o satisfy the statute of limitations for mail fraud, the government must prove that the predicate mailing occurred in the five years before the indictment." *United States v. Manges*, 110 F.3d 1162, 1169 (5th Cir. 1997). *See also United States v. Ashdown*, 509 F.2d 793, 798 (5th Cir. 1975) ("All of these mailing occurred within the statutory period; hence, there is no limitations problem.").

Federico further cites to one Ninth Circuit case, *United States v. McDonald*, 576 F.2d 1350 (9th Cir. 1978). In *McDonald*, the defendant-appellant had undertaken actions outside the statute of limitations, and argued that – because his participation in the scheme terminated more than five years ago – the prosecution was therefore untimely. *Id.* at 1357. The Ninth Circuit found that the mail fraud count was "timely charged" where "mailings upon which the charges were based took place within five years of the indictment" despite that defendant-appellant's actions occurred outside of the five-year period. *Id.* The *McDonald* court concluded that later mailings to victims after victims parted with their money "can be for the purpose of executing a fraudulent scheme," and that "the scheme was not fully executed at the time the mailings were made." *Id.* at 1357-58.[9]

Thus, based on the testimonial and documentary evidence in the record – demonstrating that Imperial, as a routine custom and practice, logged the day the check was received, and that the relevant check for Count Two was marked as received on December 3, 2007 – Federico argues that he is entitled to a judgment of acquittal on Count Two based on the indictment being untimely brought by the government by three days.

In contrast, the government argues that the statute of limitations commences from when Federico received the monetary benefits from the scheme. The government relies primarily on *Carroll v. United States*, 326 F.2d 72 (9th Cir. 1963). Although *Carroll* concerned securities fraud, the Ninth Circuit reached its holding as to the statute of limitations by looking to an earlier Supreme Court decision, *Kann v. United States*, 323 U.S. 88 (1944), involving mail fraud. In

---

[9] The Ninth Circuit made no findings or holdings in relation to the mailing date and statute of limitations.

11

*Kann*, "the Supreme Court pointed out that the fraudulent scheme involved (mail fraud) was completed when the defendants received the money that was intended to be obtained by their fraud, and that certain subsequent transactions (banking transactions) were merely incidental and collateral to it, and not a part of it." *Carroll*, 326 F.2d at 86. The Ninth Circuit concluded in *Carroll* that the securities fraud case was untimely because the money had already been exchanged prior to any later mailings that were made by the defendants that were sent within the statute of limitations period. *Id.* In a later case, the Ninth Circuit similarly found that continuing activities to perpetuate the scheme are part of the execution of that scheme. *See United States v. Brown*, 578 F.2d 1280, 1285 (9th Cir. 1978) ("In analogous prosecutions under the mail fraud statute . . . activities tending to lull investors, either to prevent discovery of fraud or to permit further fraudulent activities to progress unhindered, have been held to constitute a part of the execution of the fraudulent scheme and to be integral to the offense rather than incidental to it.").

Thus, *Carroll* suggests that a mail fraud scheme does not end for the purposes of the statute of limitations until a defendant has received the money intended to be obtained by his or her fraud if that is, in fact, part of the charged scheme. Here, because Federico did not receive his share of the money from the fraud until weeks following December 3, 2007 after the money flowed from Imperial to Rogue Consultants and thereafter to Federico, the government asserts that Count Two was timely brought in the indictment filed December 6, 2012.

Although it is a close question, the Court finds that the holdings in *Carroll*, given the nature of the "scheme or artifice to defraud," affirm the government's view that the mailing element does not commence the statute of limitations in this matter. *Carroll* states that the element of the scheme in a mail fraud count concludes and the statute of limitations commences when payment is received by a defendant. Federico primarily relies on out of circuit authority for the proposition that it is the date of mailing that commences the statute of limitations period for a mail fraud charge. While such out of circuit authority is certainly persuasive, especially where numerous other circuits have reached similar conclusions, the Court is bound to follow the edicts and holdings as articulated in this circuit. Contrary to Federico's assertion, the only cited case from this circuit, *McDonald*, did not explicitly state that the date of mailing is what commences

12

the statute of limitations. Instead, *McDonald* merely remarked that there are no statute of limitations issues where the mailing dates were made within five years. Such a conclusion does not foreclose the prior conclusion articulated in *Carroll* that a mail fraud scheme ends when the crime is complete. As such, it also requires the Court to do a more wholistic evaluation of the scheme. Here, completion of the crime involved payment received by the defendant. In fact, the entire scheme was created to ensure that the defendant received the payments.

Thus, the Court concludes that the statute of limitations for Count Two began when Federico received his share of the payment. Because the evidence undisputedly demonstrates that Federico received his share weeks following the December 3, 2007 date, the Court finds that the indictment was timely as to Count Two. Accordingly, the Court **DENIES** Federico's motion for acquittal as to Count Two on the basis that the count is barred by the statute of limitations.

## III. CONCLUSION

For the foregoing reasons, the motion for acquittal is **DENIED**.

This Order terminates Docket Number 460.

**IT IS SO ORDERED.**

Dated: December 2, 2019

_____
YVONNE GONZALEZ ROGERS
United States District Judge